COCHLIN v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:COCHLIN v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 COCHLIN v. STATE
2020 OK CR 23
Case Number: F-2019-488
Decided: 12/03/2020
DAVID CHRISTOPHER COCHLIN, Appellant v. THE STATE OF OKLAHOMA, Appellee.
Cite as: 2020 OK CR 23, __ __

 

 

SUMMARY OPINION

LUMPKIN, JUDGE:

¶1 Appellant, David Christopher Cochlin, was tried by jury in the District Court of Canadian County, Case No. CF-2018-53, and convicted of two counts of Second Degree (Depraved Mind) Murder, in violation of 21 O.S.2011, § 701.8. The jury recommended punishment of life imprisonment on both counts.[1] The trial court sentenced Appellant accordingly and ordered the sentences to run concurrently with one another. From this judgment and sentence, Appellant appeals.

¶2 Appellant raises the following propositions of error in this appeal:

I. The trial court abused its discretion by submitting the second degree depraved mind murder instruction to the jury.

II. The trial court abused its discretion in admitting evidence of Appellant's blood alcohol content, taken only pursuant to a general and routine blood test and not pursuant to reliable methods for adducing an accurate blood-alcohol level, in violation of Defendant's [sic] constitutional right to due process.

¶3 After thorough consideration of these propositions and the entire record before us on appeal including the original record, transcripts, and briefs of the parties, we have determined that under the law and the evidence, Appellant is not entitled to relief.

I.

¶4 While the proposition heading of Appellant's first proposition challenges the jury instruction given by the trial court on second degree murder, his argument challenges the sufficiency of the evidence supporting his conviction of second degree murder. The heart of Appellant's complaint is that insufficient evidence was presented that his conduct in killing Sean Tucker and Luke Ross, both nineteen years old, by crashing into their truck, evinced a depraved mind. This Court follows the standard for the determination of the sufficiency of the evidence which the United States Supreme Court set forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979). Easlick v. State, 2004 OK CR 21, ¶ 15, 90 P.3d 556, 559; Spuehler v. State, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-04. Under this test, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; Easlick, 2004 OK CR 21, ¶ 5, 90 P.3d at 558; Spuehler, 1985 OK CR 132, ¶ 7, 709 P.2d at 203-04. "A reviewing court must accept all reasons, inferences, and credibility choices that tend to support the verdict." Taylor v. State, 2011 OK CR 8, ¶ 13, 248 P.3d 362, 368.

¶5 The State had to prove beyond a reasonable doubt that Appellant killed both young men by engaging in conduct "which was imminently dangerous" to them and his conduct "evinced a depraved mind in extreme disregard of human life" but without "the intention of taking the life of any particular individual." Instruction No. 4-91, OUJI-CR (2d). The phrases "depraved mind" and "imminently dangerous conduct" are defined in Instruction No. 4-91, OUJI-CR (2d) as follows:

You are further instructed that a person evinces a "depraved mind" when he engages in imminently dangerous conduct with contemptuous and reckless disregard of, and in total indifference to, the life and safety of another.

You are further instructed that "imminently dangerous conduct" means conduct that creates what a reasonable person would realize as an immediate and extremely high degree of risk of death to another person.

Some fact scenarios illustrating depraved mind are the situation where the defendant shoots his gun or throws a large rock randomly into a crowd. Bench v. State, 2018 OK CR 31, ¶ 76, 431 P.3d 929, 954-55.

¶6 The record shows Appellant admitted to drinking three drinks at the Sushi Bar on the night in question, but his check showed eight drinks were served at his table, three of which were doubles. He admitted he was very familiar with the intersection of Mustang Road and 150th Street because he had lived about a quarter mile from that intersection for five years. Appellant admitted he was driving his Mercedes from the Valero station on Northwest Expressway west of the Kilpatrick Turnpike to the intersection at Northwest 150th and Mustang Road. He admitted his heel was on the accelerator and the car accelerated. Numerous witnesses at the scene of the collision noted Appellant's slurred speech and odor of alcohol and testified they believed him to be drunk. Evidence from the event data recorder in Appellant's car showed the car was traveling at 149 MPH five seconds before the crash and at 96 MPH. when it crashed into the victims' small truck. The impact caused the gas tank to explode and the victims were burned beyond recognition. The data recorder evidence also indicated Appellant did not stop at the four way stop sign at the intersection. While this evidence showed Appellant did apply the brakes about three seconds prior to impact, his application was insignificant. Two blood tests performed on Appellant's blood showed Appellant was well over the legal blood alcohol limit of .08 at the time of the collision.

¶7 The jury heard Appellant's testimony that he was not drunk, that he set his cruise control between 40 and 45 MPH when he turned onto Mustang Rd., that he got his foot stuck under the brake, that the car accelerated and that he did not see the little truck until it was too late. Clearly the jury found Appellant's testimony incredible. "The credibility of witnesses and the weight and consideration to be given to their testimony are within the exclusive province of the trier of facts and the trier of facts may believe the evidence of a single witness on a question and disbelieve several others testifying to the contrary." Davis v. State, 2011 OK CR 29, ¶ 83, 268 P.3d 86, 112-13.

¶8 A person driving 149 MPH at night on a two lane road while drunk and blowing through a stop sign at an intersection plainly poses an "immediate and extremely high degree of risk of death to another person" on that road. Thus, we find the evidence adduced at trial sufficiently supports the jury's verdict. Proposition I is denied.

II.

¶9 Appellant contends in his second proposition that the results of the blood test performed on his blood drawn at OU Medical Center pursuant to the "rainbow draw" (a term used by medical personnel to denote the various tubes bearing multi-colored stoppers used to contain blood drawn from trauma patients) were improperly admitted. These results showed his blood alcohol content was .33. A test performed on a blood sample taken about five hours after the collision pursuant to a warrant showed his blood alcohol content was .20. Appellant filed a pretrial motion to suppress the "rainbow draw" test results which the trial court denied. He argues that this blood was not drawn in conformance with Board of Tests' rules. Appellant did not renew his objection to the admission of the blood test results on the "rainbow draw" evidence at trial. Therefore, we review this claim for plain error. Hogan v. State, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923; Jones v. State, 2006 OK CR 5, ¶ 24, 128 P.3d 521, 536. As set forth in Simpson v. State, 1994 OK CR 40, ¶¶ 11, 30, 36, 876 P.2d 690, 694-95, 698, 700-02, we determine whether Appellant has shown an actual error, which is plain or obvious, and which affects his or her substantial rights. This Court will only correct plain error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice. Id., 1994 OK CR 40, ¶ 30, 876 P.2d at 700-01.

¶10 The Oklahoma Statutes, 47 O.S.2011, §§ 751-52 and 47 O.S.Supp.2015, § 753, set forth the procedures for law enforcement personnel to use when they seek to obtain blood and breath samples from individuals for use in prosecuting alcohol/drug related motor vehicle offenses and state that these procedures must comply with the relevant provisions of the Board of Tests found in the Oklahoma Administrative Code. The Oklahoma Administrative Code, § 40:20-1-3, provides the collection of human blood "under the provisions of Title 47 and Title 3 Section 303 and Title 63 Section 4210A, Oklahoma Statutes shall be performed as set forth in this Section." Thus, these statutes apply to blood collection at the behest of law enforcement. However, 47 O.S.2011, § 757, provides that other competent evidence, besides blood drawn and tested in conformance with the preceding statutory provisions, may be admitted on the question of whether a person was under the influence of alcohol. Cf. State v. Hodges, 2020 OK CR 2, ¶ 8, 457 P.3d 1093, 1096-97 (holding blood testing evidence taken by law enforcement in compliance with another state's procedures is not inadmissible because Oklahoma procedures were not followed and pursuant to Section 757 may be admissible if the evidence would have been admissible in the other state). Section 757 contemplates the situation where compliance with Board of Tests' rules does not occur, but other evidence exists regarding whether a defendant was under the influence of alcohol or other intoxicants.

¶11 In the instant case, OU Medical Center collected the blood samples at issue as part of its routine practice in treating incoming trauma patients, not pursuant to a statutory law enforcement request. Thus, compliance with the statutory and Board of Tests requirements for collecting blood samples did not occur and was not required.

¶12 Nothing in the record indicates the test performed by the OSBI on the blood samples was unreliable. Melissa Melton, a registered nurse, drew the blood samples at 12:08 a.m. from Appellant's I.V. upon his arrival at the hospital. She affirmed that Appellant had received no drugs at that time and that the vials used in the "rainbow draw" contained anti-coagulant liquid. Danielle Ross-Carr, who conducted the testing at the OSBI, explained her test procedures and results (.33) and though she did not test for anti-coagulant in the samples, she looked at the quality of the samples and did not note anything which suggested the samples were not in liquid form and red in color. She further affirmed that the OSBI laboratory is certified by ANAB, formerly known as ASCLD/LAB.

¶13 We agree with the district court's conclusion that nothing about the statutory scheme set forth above affected the admissibility of the evidence related to the "rainbow draw" blood test results. Section 757 allows the trial court to consider other evidence of intoxication and determine the admissibility of that evidence. Any divergence from the statutory procedures simply goes to the weight and credibility of the evidence.[2] The OU blood sample was not procured at the request of law enforcement nor was it procured pursuant to a warrant. When the sample was tested for the presence of alcohol, it was tested in a fully accredited OSBI laboratory. In this regard, compliance with the statutory and Board of Tests' requirements was met. We find no error and therefore no plain error, in the admission of the hospital blood sample test results.

¶14 We hold that failure to comply with Board of Tests' procedures for the collection and testing of blood samples does not equate to the inadmissibility of test results from those samples. Under the authority of Section 757, the trial court may consider other competent evidence regarding the collection and testing of those samples and determine whether the evidence is admissible. To the extent our prior cases are inconsistent with this holding, they are overruled. Proposition II is denied.

DECISION

¶15 The JUDGMENT and SENTENCE is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2020), the MANDATE is ORDERED issued upon the delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF CANADIAN COUNTY
THE HONORABLE PAUL HESSE, DISTRICT JUDGE

 
 
 
 APPEARANCES AT TRIAL

 R. SCOTT ADAMS
 ROBERT GRAY
 401 HUDSON, #100
 OKLAHOMA CITY, OK 73102
 COUNSEL FOR DEFENDANT

 ERIC EPPLIN
 ASST. DISTRICT ATTORNEY
 303 NORTH CHOCTAW
 EL RENO, OK 73036
 COUNSEL FOR THE STATE
 
 
 APPEARANCES ON APPEAL

 LAURA K. DESKIN
 400 NORTH WALKER, #230
 OKLAHOMA CITY, OK 73012
 AND
 CARL HUGHES
 KENNETH HUGHES
 1218 EAST 9TH STREET, #8
 EDMOND, OK 73034
 COUNSEL FOR APPELLANT

 MIKE HUNTER

 ATTORNEY GENERAL OF OKLAHOMA
 THEODORE M. PEEPER
 ASST. ATTORNEY GENERAL
 313 N.E. 21ST ST.
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR THE STATE
 
 
 

 

OPINION BY: LUMPKIN, J.
LEWIS, P.J.: Concurs in Results
KUEHN, V.P.J.: Concur
HUDSON, J.: Concur
ROWLAND, J.: Concur

FOOTNOTES

[1] Appellant will be required to serve 85% of his sentence before becoming eligible for parole. 21 O.S.Supp.2015, § 13.1.

[2] As I stated in my separate writing in Hodges, 2020 OK CR 2, ¶ 4, 457 P.3d 1093, 1099, (Lumpkin, J., concurring in results), "[w]hile certain procedures in the taking of blood or breath samples may go to the weight and credit of that evidence, the ultimate decision as to admissibility of that evidence is vested in the trial courts of this State."

LEWIS, PRESIDING JUDGE, CONCURS IN RESULTS:

¶1 I concur that the Judgment and Sentence in this case should be affirmed. I also concur in the resolution of proposition one. I can only concur in the result reached in the analysis of proposition two.

¶2 The Opinion ignores plain error analysis in order to expand the law relative to blood evidence in DUI cases, where no expansion is necessary. I, therefore, concur in results only.

¶3 In proposition two, Appellant attacks evidence which was introduced at trial without a contemporaneous objection. Without the contemporaneous objection, any error is waived unless a substantial right of a party is affected. See Hancock v. State, 2007 OK CR 9, ¶ 72, 155 P.3d 796, 813, overruled on other grounds by Williamson v. State, 2018 OK CR 15, ¶ 51 n.1, 422 P.3d 752, 762 n.1 (holding that a contemporaneous objection must be made at the time the alleged error is being committed); Dodd v. State, 2004 OK CR 31, ¶ 64, 100 P.3d 1017, 1038. See 12 O.S.2011, § 2104. This Court may take notice of plain errors affecting substantial rights, meaning that the error affected the outcome of the proceeding. Barnard v. State, 2012 OK CR 15, ¶ 13, 290 P.3d 759, 764; see also 12 O.S.2011, § 2104. I would find that no plain error occurred as it did not affect the outcome of this trial.

¶4 The evidence complained of consists of the results of a hospital obtained blood sample, "rainbow draw," taken at 12:08 a.m. in the course of the hospital emergency room protocol. Admission of the results of this sample does not constitute plain error, because Appellant has not shown that the results affected the outcome of this trial.

¶5 Even ignoring the "rainbow draw" results, the State presented overwhelming evidence of Appellant's guilt. The State introduced blood test results performed on blood obtained at 4:38 a.m. which showed a blood alcohol level of .208 grams per 100 milliliters of blood. Appellant also admitted to drinking prior to the accident. Tara Baker testified that Appellant was indeed drinking prior to the accident. Appellant smelled of alcohol. Numerous witnesses saw Appellant and believed him to be intoxicated. These witnesses included Oklahoma City Police Officer Nickolas O'Bryant and EMSA Paramedic Stuart Wegenka.

¶6 The fact that Appellant was traveling at an extreme rate of speed before slamming into the rear end of the victim's vehicle and his initial denial of driving also lends evidence to support his intoxication. Appellant's combativeness at the scene, on his way to the hospital in the ambulance, and at the hospital are also indicative of his intoxication.

¶7 I would find that the introduction of the results of the blood test on this "rainbow draw" did not affect the outcome of this trial and, therefore, that no plain error occurred.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1994 OK CR 40, 876 P.2d 690, SIMPSON v. STATE
Discussed at Length
 2004 OK CR 21, 90 P.3d 556, EASLICK v. STATE
Discussed at Length
 2004 OK CR 31, 100 P.3d 1017, DODD v. STATE
Discussed
 2006 OK CR 5, 128 P.3d 521, JONES v. STATE
Discussed
 2006 OK CR 19, 139 P.3d 907, HOGAN v. STATE
Discussed
 2007 OK CR 9, 155 P.3d 796, HANCOCK v. STATE
Discussed
 2011 OK CR 8, 248 P.3d 362, TAYLOR v. STATE
Discussed
 2011 OK CR 29, 268 P.3d 86, DAVIS v. STATE
Discussed
 2012 OK CR 15, 290 P.3d 759, BARNARD v. STATE
Discussed
 2018 OK CR 15, 422 P.3d 752, WILLIAMSON v. STATE
Discussed
 2018 OK CR 31, 431 P.3d 929, BENCH v. STATE
Discussed
 2020 OK CR 2, 457 P.3d 1093, STATE v. HODGES
Discussed at Length
 1985 OK CR 132, 709 P.2d 202, SPUEHLER v. STATE
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2104, Rulings on Evidence
Discussed
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 13.1, Required Service of Minimum Percentage of Sentence - Offenses Specified
Cited
 21 O.S. 701.8, Second Degree Murder
Cited
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 753, Refusal to Submit to Test - Revocation of License - Reinstatement of License
Cited
 47 O.S. 757, Other Competent Evidence - Admissibility
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA